IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SAMANTHA MARIE SWARTFAGER, )
)
      Plaintiff, )
)
    v. ) Civil Action No. 15-110-E
)
CAROLYN W. COLVIN, ACTING )
COMMISSIONER OF SOCIAL SECURITY, )
)
      Defendant. )

O R D E R

AND NOW, this 31st day of August, 2016, upon consideration of Plaintiff's Motion for Summary Judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401, et seq., and denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381, et seq., finds that the Acting Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a

federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff argues that the Administrative Law Judge ("ALJ") improperly assessed the evidence of record in formulating Plaintiff's residual functional capacity assessment ("RFC"). More specifically, Plaintiff contends, in essence, that the ALJ erred by: (1) improperly evaluating the opinions of treating psychiatrist Matthew Dejohn, M.D., regarding Plaintiff's mental impairments; and (2) failing to evaluate properly Plaintiff's credibility with regard to her physical impairments. The Court disagrees and finds that substantial evidence supports the ALJ's findings as well as his ultimate determination, based on all the evidence presented, of Plaintiff's non-disability.

First, the Court finds that there is no merit in Plaintiff's contention that the ALJ improperly considered the opinions rendered by Dr. Dejohn. (R. 464-66, 620). It is well-established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). A treating physician's opinion is only entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(c)(2)). "If, however, the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains [his or] her reasons and makes a clear record." Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 148 (3d Cir. 2007). A treating physician's opinion on the ultimate issue of disability is not entitled to any "special significance," and an ALJ is not required to accept it since the determination of whether an individual is disabled "is an ultimate issue reserved to the Commissioner." Smith v. Comm'r of Soc. Sec., 178 Fed. Appx. 106, 112 (3d Cir. 2006).

Upon review of all the evidence, the Court finds that the ALJ did not fail to give adequate consideration to the opinions of Dr. Dejohn in formulating Plaintiff's RFC. The ALJ, instead, properly fulfilled his duty as fact-finder to evaluate fully the opinions of Dr. Dejohn, considering various factors, and in light of all the evidence presented in the record. See 20 C.F.R. §§ 404.1527, 416.927. In his decision, the ALJ noted that the doctor opined in an August, 2012, medical source statement that Plaintiff had significant anxiety, but that she had no more than moderate limitations in any work related function. (R. 33). Further, the ALJ explained that Dr. Dejohn's treatment notes from 2012 and 2013 showed no significant changes in Plaintiff's mental status examinations, and that, although the examinations at times showed that Plaintiff's mood was depressed and anxious, they "were otherwise unremarkable for significant symptoms or limitations." (R. 33). The ALJ gave Dr. Dejohn's 2012 assessment "great weight" since it was consistent with his treatment notes showing "generally normal mental status examinations on a sustained basis." (R. 33). The ALJ also noted that the assessment was consistent with the fact that Plaintiff had not been referred for any psychiatric hospitalization, that she was the

primary caregiver for her two children at the time, and that it was consistent with her report to her new psychiatrist in 2013 (at the time when her treatment ended with Dr. Dejohn) that "she felt stable on her current medication and was coping with stressors, denied feelings of hopelessness or suicidal ideations, and had a euthemic mood." (R. 33-34).

On the other hand, the ALJ stated that a simple one-page form filled out by Dr. Dejohn in September, 2013, (at the end of his treatment relationship with Plaintiff) was entitled to "little weight" in his determination of Plaintiff's RFC. (R. 34). In that document, Dr. Dejohn expressed an opinion that contained quite different limitations than his previous one, including that Plaintiff suddenly "would be unable to maintain regular attendance on a sustained basis, would be unable to interact appropriately with fellow workers on a sustained basis, and would be unable to interact appropriately with supervisors on a sustained basis." (R. 34, 620). Upon consideration, the ALJ found that this later opinion by Dr. Dejohn assessing such limitations was not supported by objective evidence. Specifically, the change from only moderate limitations did not appear to be justified since the doctor's treatment notes showed no significant changes or deterioration in Plaintiff's condition. (R. 34). Additionally, the ALJ found the later opinion to be inconsistent with much of the other evidence of record, including Plaintiff's reports that she was stable on her current medication, that her examinations and treatment notes were generally consistent and unremarkable for significant symptoms, that she had not visited an emergency room for acute mental symptoms nor had she been referred to any inpatient care, and that the 2013 assessment was inconsistent with Plaintiff's global assessment of functioning ("GAF") scores showing no more than moderate, nearly mild, symptoms. (R. 34).

Moreover, the Court notes that the opinions of Dr. Dejohn at issue here consist of a medical statement form and a one-page four-question form that were simply filled out by the doctor. (R. 464-70, 620). Both forms consist of options to check or circle and blanks to be filled in by hand. The Court of Appeals for the Third Circuit has stated that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). The Court notes that while Dr. Dejohn's earlier opinion is supported by his treatment notes and other evidence in the record, his later opinion lacks significant discussion, explanation or details to justify his statements contained therein, nor is there other evidence to support his changed opinion. Thus, the Court finds that the ALJ sufficiently explained his reasons for giving Dr. Dejohn's earlier opinion "great" weight, while giving his later opinion "little" weight, in formulating Plaintiff's RFC.

Additionally, the ALJ considered the opinion of state agency psychologist Valerie Rings, Psy.D., in formulating Plaintiff's RFC. (R. 81-92). In his decision, the ALJ pointed out that Dr. Rings' opinion, from August, 2012, found that Plaintiff "had no limitations in activities of daily living, mild difficulty maintaining social functioning, moderate difficulty maintaining concentration, persistence, and pace, and no episodes of decompensation of extended duration." (R. 33). However, the ALJ noted that Plaintiff's representative had correctly pointed out that Dr. Rings mentioned only a single treatment note and a medical source statement from her treating psychiatrist. (R. 33). Thus, the ALJ found that the "[p]sychiatric progress notes support a finding of greater limitations in the areas of activities of daily living and social functioning," and he therefore gave "little weight" to Dr. Rings' opinion, and formulated an RFC that is more restrictive than the opinion from Dr. Rings. (R. 33).

Thus, in his decision, the ALJ clearly considered the relevant evidence in the record, provided discussion of the evidence to support his evaluation, and ultimately concluded that certain opinions were not supported by the evidence as a whole. Nevertheless, the ALJ still included in Plaintiff's RFC a number of limitations related to Plaintiff's mental health impairments, including that she "is limited to understanding, remembering, and carrying out simple instructions and performing simple, routine tasks; is limited to no work-related contact with the public, only occasional and superficial interaction with co-workers, and no more than occasional supervision; and is limited to a low stress work environment, which means no production rate pace work, but, rather, goal oriented work with only occasional and routine change in work setting." (R. 26-27). Upon review, the Court finds that the ALJ properly considered the opinions of Dr. Dejohn, as well as the other opinion evidence in the record, and that substantial evidence supports the ALJ's evaluation of the opinion evidence and his decisions giving varying weights to the opinions in making Plaintiff's RFC determination.

Second, Plaintiff asserts that the ALJ erred in evaluating her credibility. In support of this contention, Plaintiff argues that the ALJ failed to consider properly her subjective complaint that she needs to lie down frequently to alleviate her back pain. The Court finds, however, that the ALJ did in fact properly address the evidence in the record, and that he adequately considered Plaintiff's subjective complaint—and ultimately accounted for the limitations resulting from her physical impairments—in forming Plaintiff's RFC.

In determining whether a claimant is disabled, the ALJ must consider all of a claimant's symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. See 20 C.F.R. §§ 404.1529(a), 416.929(a). A claimant's subjective complaints of symptoms alone are not sufficient to establish disability. See id. In evaluating a claimant's subjective complaints, the ALJ must consider, first, whether the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms he alleges. See 20 C.F.R. §§ 404.1529(b), 416.929(b). Once an impairment is found, the ALJ then must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which those symptoms limit his ability to work. See 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii) (factors relevant to symptoms can include daily activities, medications and medical treatment). In the ALJ's decision here, after examining Plaintiff's medical treatment and subjective complaints in connection with her alleged impairments, the ALJ ultimately found that such evidence simply did not fully support the need to lie down frequently that she alleges.

More specifically, Plaintiff claims that the ALJ erred in not properly evaluating the **medical evidence** in connection with her subjective claim that she needs to lie down frequently. In fact, the ALJ discussed the medical evidence at great length, along with Plaintiff's own statements in connection with her alleged need, which he explained did not adequately substantiate her claim of a debilitatingly frequent need to lie down. In fact, the ALJ noted that "no treating physician or specialist has stated the claimant is disabled because of a physical impairment, or provided a medical source statement of the claimant's physical limitations that is inconsistent" with the RFC that he formulated. (R. 33). The ALJ also explained that the "overall record is not consistent with an individual who would need to lie down with such frequency or

4

duration that she would be precluded from work because, although she reported to a pain management physician in October, 2012, that lying down alleviated her pain, no mention whatsoever was made as to the frequency of needing to lie down or the duration of such lying down, and pain management and treating physician notes do not contain frequent references to Plaintiff's need to lie down. (R. 31). In addition to there being only a single reference in her treatment notes to lying down being helpful, the ALJ noted that his conclusion that Plaintiff does not need to lie down as frequently as she claims is supported by additional factors, including that such claim "is not consistent with diagnostic imaging that shows negative cervical and thoracic spine testing results, and L4-5 disc bulging, but no focal herniation, subluxation, or stenosis in the lumbar spine;" that pain management physical examinations have shown "lumbar spine tenderness and positive facet load testing, but negative straight leg raising and no problems with gait;" and that Plaintiff had failed even to follow through with her prescribed physical therapy appointments. (R. 31). The ALJ also stated that Plaintiff's allegation that she needed to lie down frequently is not consistent with her activities of daily living, including being the primary caregiver for her children, engaging in personal care, preparing meals, cleaning, driving, shopping, etc. (R. 31-32). The ALJ further discussed the fact that, with regard to medications, although Plaintiff had been prescribed narcotic pain medication, she informed her treating physician in September, 2012, that she was not taking any medicine for pain. (R. 32). Moreover, the ALJ stated that Plaintiff's most recent treatment notes listed pain medication among her current medications, but she testified that she takes no pain medication due to a bad liver (although there was no reference to any liver difficulty among her records). (R 32). The ALJ also discussed Plaintiff's treatment other than medications, and noted that she had treated with a pain management physician, used a TENS unit, and had received facet blocks and epidural steroid injections, but had not had any surgeries or been referred for any surgeries, nor was there any evidence of hospitalizations or frequent emergency room visits for back pain. (R. 32). Moreover, the ALJ noted that Plaintiff's pain management physician stated in August, 2013, that Plaintiff had benefited greatly from lumbar traction in the past, and that, although Plaintiff began physical therapy in September 2012, she was discharged for non-attendance after attending only two sessions. (R. 32). In the end, the ALJ simply found that Plaintiff's "overall treatment record is not consistent with an individual who experiences symptoms to such a degree that she is precluded from all work." (R. 33).

After considering all the evidence, the ALJ concluded that Plaintiff has a number of severe physical impairments, including lumbar spine degenerative disc disease, thoracic/lumbar radiculitis, asthma/bronchitis/allergic rhinitis, migraines, and obesity. (R. 21). Moreover, the ALJ incorporated a number of physical limitations in Plaintiff's RFC, including that "she can never climb a ladder, rope or scaffold; can never crawl; can only occasionally climb ramps and stairs; can only occasionally balance, stoop, kneel, or crouch; must avoid even moderate exposure to gasses, fumes, and like respiratory irritants; must avoid even moderate exposure to temperature extremes, wetness, and humidity; [and] must avoid all exposure to unprotected heights, dangerous machinery, and like workplace hazards." (R. 26). However, upon substantial review of all the evidence of record, the ALJ simply found that the evidence as a whole did not support the limitation of needing to lie down frequently that Plaintiff alleges.

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 9) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 11) is GRANTED.

s/Alan N. Bloch
United States District Judge

ecf: Counsel of record

---

Thus, the ALJ found, after careful consideration of all the evidence, that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms but [Plaintiff's] statements concerning the intensity, duration and limiting effects of [her] symptoms are not entirely credible and are inconsistent with the totality of the evidence." (R. 35). The Court finds that the ALJ did not err in evaluating Plaintiff's subjective allegation that she needs to lie down frequently because he thoroughly reviewed it in accordance with the regulations, and he provided sufficient explanation as to why he found that allegation to be not entirely credible.

In sum, the Court finds that the ALJ properly addressed the relevant evidence in the record, including full consideration of the opinions of Dr. Dejohn, and he thoroughly discussed the basis for his RFC finding. After careful review of the record, the Court finds that there is substantial evidence to support the ALJ's reasons for not giving controlling weight to Dr. Dejohn's later opinion from 2013. Additionally, the Court finds that the ALJ did not err in assessing Plaintiff's credibility. Accordingly, the Court affirms.